# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| UNITED STATES OF AMERICA, | ) |  |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. 18-CR-0056-CVE |
| SCOTT FREDERICK ARTERBURY, | ) | |
| Defendant. | ) | |

## CORRECTED [1]
## OPINION AND ORDER

Now before the Court are defendant Scott Frederick Arterbury's motion to enforce prior order suppressing evidence on grounds of collateral estoppel (Dkt. # 13), and motion, in the alternative, to suppress evidence and request for an evidentiary hearing (Dkt. # 14).

### I. Background

According to plaintiff, defendant Scott Frederick Arterbury is among the hundreds nationwide whom the Federal Bureau of Investigations (FBI) discovered accessing the child pornography website PlayPen. Dkt. # 18, at 1; see generally United States v. Workman, 863 F.3d 1313, 1314-16 (10th Cir. 2017), cert. denied, 2018 WL 1786016 (U.S. Apr. 16, 2018). To identify these individuals, the FBI obtained a warrant (the PlayPen warrant) from a magistrate judge in the Eastern District of Virginia (E.D. Va.). Workman, 863 F.3d at 1315-16. The PlayPen warrant permitted the FBI to install software onto PlayPen's server (which the FBI seized and loaded onto a separate, government server located in the E.D. Va.), and when a user accessed PlayPen, this software would install malware onto the user's computer. Id. For the user, the coup de grâce was that

---

[1] The corrected opinion and order corrects two statements on page 3 of the original opinion and order (Dkt. # 20).

the malware would then search his or her computer for identifying information, such as an IP address, and transmit it back to the FBI. Id. Identifying information in hand, the FBI would then obtain a warrant in the district in which the user lived to search his residence and computer for child pornography. Id.

In prosecuting these so-called PlayPen cases in federal courts throughout the country, plaintiff, in some instances, has encountered a roadblock in the form of a two-part legal question that district courts have answered differently: i.e. does a magistrate judge in the E.D. Va. have the authority to issue a warrant seeking to search property outside of her judicial district? And, even if no, does the good faith exception to the Fourth Amendment's exclusionary rule (see United States v. Leon, 468 U.S. 897 (1984)) nevertheless require district courts to admit evidence obtained pursuant to the PlayPen warrant? See generally Christine W. Chen, Comment, The Graymail Problem in a World Going Dark: Balancing the Interests of the Government and Defendants in Prosecutions Using Network Investigative Techniques, 19 Colum. Sci. & Tech L. Rev. 185, 187 (2017) (noting divide among district courts as to these questions and collecting cases).

Defendant, who plaintiff alleges accessed PlayPen from a computer in Oklahoma, answers both questions in the negative. And, in a prior prosecution against him, based on facts identical to the instant matter, a different judge in this district agreed. See United States of America v. Scott Frederick Arterbury, 15-CR-182 (N.D. Okla. filed Dec. 7, 2015) (Arterbury I), Dkt. # 47.

In Arterbury I, on December 7, 2015, a grand jury indicted defendant on one count of possession of child pornography in violation of 18 U.S.C. §§ 2252(a)(4)(B) and 2252(b)(2). Id. at Dkt. # 14. Defendant filed a motion to suppress the photos and videos of child pornography that the FBI obtained in searching his residence and computer. Id. at 33. The magistrate judge handling

pretrial matters issued a report and recommendation recommending that the district judge grant defendant's motion, finding: (1) under Fed. R. Crim. P. 41 and the Federal Magistrate Judges Act, the E.D. Va. magistrate judge lacked the authority to issue a warrant seeking to search property outside of her judicial district; and (2) the good faith exception did not apply to evidence obtained pursuant to the PlayPen warrant, as the E.D. Va. magistrate judge's lack of jurisdictional authority rendered the warrant void ab initio. Id. at Dkt. # 42. The district court accepted the magistrate judge's report and recommendation and granted defendant's motion to suppress. Id. at Dkt. # 47. After the district court denied plaintiff's motion to reconsider the suppression order, on July 26, 2016, plaintiff filed a notice of interlocutory appeal with the Tenth Circuit, challenging the suppression order. Id. at Dkt. ## 55-56. But shortly thereafter, plaintiff moved to voluntarily dismiss its interlocutory appeal and, in the district court, moved to voluntarily dismiss the indictment. Id. at Dkt. # 63, Dkt. # 66. On October 20, 2016, the Tenth Circuit dismissed plaintiff's interlocutory appeal. Id. at Dkt. # 63.[2] On November 10, 2016, the district court dismissed the indictment, "without prejudice to re-filing same." Id. at Dkt. # 67.

Plaintiff's effort to hold defendant accountable for his alleged possession of child pornography, however, would not end there. On July 21, 2017, the Tenth Circuit issued an opinion in Workman, 863 F.3d 1313, which held that, even assuming, arguendo, that the E.D. Va. magistrate judge lacked the authority to issue the PlayPen warrant, evidence obtained pursuant to it is admissible under the good faith exception. Id. at 1320-21. The Court explained that a reasonably

---

[2]   Although the Tenth Circuit's dismissal order does not state whether the appeal was dismissed with or without prejudice, the Tenth Circuit docket sheet states that it was a "[p]rocedural termination without judicial action by the Clerk of the Court." Docket Entry for October 20, 2016, at 2:15 p.m., United States v. Arterbury, No. 16-5117 (10th Cir. July 27, 2016).

3

well-trained agent (whom the law presumes is a non-lawyer) could not have been expected to recognize the Playpen warrant's jurisdictional infirmities, which the E.D. Va. magistrate judge herself arguably overlooked. Id.³ Because Workman overruled the legal basis upon which defendant's motion to suppress in Arterbury I was granted, plaintiff believes it is entitled to prosecute defendant for the conduct charged in Arterbury I. Dkt. # 17, at 102. Accordingly, on March 7, 2018, a separate grand jury returned an indictment identical to the one in Arterbury I, charging one count of possession of child pornography in violation of 18 U.S.C. §§ 2252(a)(4)(B) and 2252(b)(2). Dkt. # 17, at 1-2; Dkt. # 2.⁴

Currently before the Court are defendant's motion to enforce the Arterbury I suppression order on the ground of collateral estoppel (Dkt. # 13), and, in the alternative, motion to suppress evidence and request for an evidentiary hearing (Dkt. # 14).

## II. Defendant's Motion to Enforce the Arterbury I Suppression Order

Defendant argues, on two grounds, that the Arterbury I suppression order binds the parties in this case. First, citing no authority, defendant asserts that because the Tenth Circuit's order dismissing plaintiff's interlocutory appeal of the Arterbury I suppression order did not specify whether the appeal was dismissed with or without prejudice, this Court must presume that the dismissal was with prejudice. Dkt. # 13, at 3. Accordingly, defendant contends, plaintiff waived its right to appeal the Arterbury I suppression order and that order thus binds plaintiff in this case. Id.

---

³ It appears, for courts in the Tenth Circuit, that Workman is the last word on this issue; on April 16, 2018, the Supreme Court denied Andrew Workman's (i.e. the defendant in Workman) petition for writ of certiorari. — S. Ct. —, 2018 WL 1786016 (U.S. Apr. 16, 2018).

⁴ Plaintiff filed a notice of related case, acknowledging that the instant matter is based on the same facts as Arterbury I. Dkt. # 5.

4

at 3-4. Second, defendant argues that the doctrine of collateral estoppel requires this Court to enforce the Arterbury I suppression order. Id. at 5-13 (discussing United States v. Oppenheimer, 242 U.S. 85 (1916); Searing v. Hayes, 684 F.2d 694 (10th Cir. 1982); United States ex rel. DiGiangiemo v. Regan, 528 F.2d 1262 (2d. Cir. 1975); United States v. Evans, 655 F. Supp. 243 (E.D. La. 1987)).[5]

In response, plaintiff notes defendant's failure to support his argument that this Court must presume that the Tenth Circuit's dismissal of plaintiff's interlocutory appeal was with prejudice. Dkt. # 17, at 6. Plaintiff adds that where, as here, a district court dismisses an indictment without prejudice, plaintiff has the right to seek reindictment for the same offense. Id. (citing United States v. Stoker, 522 F.2d 576, 580 (10th Cir. 1975); United States v. Abdush-Shakur, 314 Fed. App'x 97, 99 (10th Cir. 2008)).[6] As to defendant's second argument, plaintiff argues that collateral estoppel is inapplicable here because Workman, issued between the Arterbury I dismissal and the grand jury return of the instant indictment, is an intervening change in law. Dkt. # 17, at 4-5 (citing Spradling v. City of Tulsa, 198 F.3d 1219, 1223 (10th Cir. 2000) (" . . . collateral estoppel [is] inapplicable where, between the first and second suits, an intervening change in the law . . . create[s] new legal conditions.") (citation omitted)).

---

[5]  In addition, defendant asserts broadly that plaintiff's seeking a new indictment against him is "unconscionable and a violation of his procedural due process rights under the Fifth Amendment to the United States Constitution." Id. at 5.

[6]  This and other cited unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

5

Defendant replies that the change-in-law exception to collateral estoppel does not apply in this case because Workman did not change the law. Dkt. # 19, at 1.[7] Rather, defendant argues, Workman merely applied existing law (i.e. the good-faith exception) correctly, and there is no exception to collateral estoppel where a previous issue was merely decided erroneously. Id. at 4. An erroneous determination, defendant asserts, can be corrected only on direct review. Id. at 4-12 (discussing Oppenheimer; Federated Dept. Stores Inc. v. Moitie, 452 U.S. 394 (1981); Bryant v. Merit Systems Protection Board, 878 F.3d 1320 (Fed. Cir. 2017)).[8]

The Court considers first defendant's argument that the Court must (1) presume that the Tenth Circuit dismissed plaintiff's interlocutory appeal of the Arterbury I suppression order with prejudice (because the dismissal order was silent as to prejudice), and (2) conclude that plaintiff thus waived its right to appeal the suppression order and that the order thus binds plaintiff in this case. Defendant's argument is grounded in neither law nor logic. Defendant does not provide, and the Court has not found, support for the proposition that voluntarily dismissed appeals are presumed to be with prejudice. Rather, the weight of authority suggests that, under Fed. R. App. P. 42, a voluntarily dismissed appeal may be reinstated if a timely notice of appeal can still be filed. See

---

[7]  Defense counsel is advised that in the Northern District of Oklahoma replies in criminal cases are to be filed only with permission of the court (which defense counsel did not seek prior to filing defendant's reply). See N.D. Okla. LCrR 47. Accordingly, the scheduling order in this case did not set a due date for a reply. See Dkt. # 11. However, the Court has reviewed and considered his reply.

[8]  In addition, in his reply, defendant clarifies that he makes no argument under the doctrine of the law of the case. Id. at 12. See generally United States v. Alvarez, 142 F.3d 1243, 1247 (10th Cir. 1998) ("The law of the case doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case.") (quotation omitted). In its response brief, plaintiff stated that it was uncertain as to whether defendant sought to proffer an argument under this doctrine. Dkt. # 17, at 7.

6

16AA C. Wright & A. Miller, Federal Practice & Procedure § 3998 (4th ed. Updated April 2018) (collecting cases). Federal Rule of Appellate Procedure 4 provides that the government had thirty-days after the Arterbury I court entered the suppression order, or an order on reconsideration, to file a notice of appeal. That time has obviously passed, and defendant is therefore correct, in a sense, that plaintiff is foreclosed from refiling its interlocutory appeal of the Arterbury I suppression order. But plaintiff is not seeking to do so. And defendant does not proffer, and the Court does not see, any reason why the fact that plaintiff is time-barred from refiling its interlocutory appeal of the Arterbury I suppression order leads to the conclusion that plaintiff is also barred from seeking a new indictment against defendant, which the Arterbury I court dismissed, in no uncertain terms, "without prejudice to refiling same." Arterbury I, 15-CR-182 at Dkt. # 47.

Next, the Court addresses defendant's argument that the doctrine of collateral estoppel makes the Arterbury I suppression order binding here. The precise question that this argument presents is, as far as the Court can tell, one of first impression. It is the following: does collateral estoppel bar a prosecuting authority from prosecuting a defendant where a suppression order was granted in defendant's favor in a prior litigation at a procedural stage where jeopardy had not attached, and where, since the prior litigation, a higher court has issued controlling precedent overruling the legal basis upon which the suppression order was granted? For reasons now explained, in the Court's opinion, the answer is no.

Though rooted in and usually associated with civil litigation, courts have applied the doctrine of collateral estoppel in the criminal context since at least 1916. Michelle S. Simon, Offensive Issue Preclusion in the Criminal Context: Two Steps Forward, One Step Back, 34 U. Mem. L. Rev. 753, 756 (citing Oppenheimer, 242 U.S. 85); see also, e.g., Smith v. Dinwiddie, 510

F.3d 1180 (10th Cir. 2007) ("Although better known as a civil law concept, collateral estoppel also applies in criminal cases.") (citation omitted). In principle, the doctrine is easy to understand: its bars relitigation between the same parties of issues actually determined at a prior, separate proceeding. Ashe v. Swenson, 397 U.S. 436, 442 (1970). And where a criminal defendant seeks to prevent the same prosecuting authority from relitigating an ultimate issue determined at a prior proceeding where jeopardy attached, the law is clear: the prosecuting authority is constitutionally barred from doing so, as, in Ashe, the Supreme Court recognized collateral estoppel as "an ingredient of the Fifth Amendment guarantee against double jeopardy." Id. at 442; see also Dinwiddie, 510 F.3d at 1186-87 ("[collateral estoppel] is embodied in the Fifth Amendment's Double Jeopardy Clause . . . .") (citing Ashe, 397 U.S. at 445).[9]

The Arterbury I court, however, entered the suppression order before trial, and jeopardy, therefore, had not attached. See United States v. Wampler, 624 F.3d 1330, 1341 (10th Cir. 2010) ("Jeopardy attaches in a jury trial when the jury is empaneled and sworn . . . and in a bench trial when the court begins to hear evidence.") (quotation omitted). In the instant matter, the operative question is thus whether criminal collateral estoppel has a source other than the Double Jeopardy Clause, such that defendant may invoke the doctrine to bar relitigation of an issue determined at a prior proceeding in which jeopardy never attached. According to one leading commentator, this

---

[9] Two ways, alluded to above, in which the Supreme Court has limited its holding in Ashe warrant mention. First, in Heath v. Alabama, 474 U.S. 82 (1985), the Supreme Court held that the Double Jeopardy Clause does not bar identical successive prosecutions if different prosecuting authorities bring them (i.e. if different states, or a state and the federal government, bring the prosecutions). Id. at 88. Second, in Dowling v. United States, 49 U.S. 342 (1990), the Supreme Court clarified that collateral estoppel does not apply to acquitted-act evidence from a prior proceeding if the evidence is not determinative of an ultimate issue in the successive proceeding. Id. at 348.

prospect "remains in doubt." Wayne R. La Fave, et al., Criminal Procedure § 10.6(d) (4th ed. Updated Dec. 2017); see also id. § 17.4(a). Indeed, criminal collateral estoppel's constitutionalization in Ashe, ironically, led to its weakening; the Ashe Court grounded the doctrine in the Fifth Amendment's relatively narrow prohibition against double jeopardy, whereas courts previously applied it according to the wider-reaching principles of due process. See Note, The Due Process Roots of Criminal Collateral Estoppel 109 Harv. L. Rev. 1729, 1734-40 (1990). Ultimately, however, though diminished in vigor, criminal collateral estoppel outside of a double jeopardy context is not dead. As evidence of the doctrine's continued vitality in this circumstance, defendant urges Court to consider the following cases cited above: Oppenheimer, DiGiangiemo, and Evans.[10]

In Oppenheimer, the Supreme Court (with Justice Holmes delivering the opinion) affirmed a dismissal of an indictment on the ground that an indictment for the same offense had previously been dismissed, in a separate action, as time-barred. 242 U.S. at 87-88. Importantly, the Court affirmed the dismissal notwithstanding the facts that defendant was never in jeopardy in the first proceeding and, since that proceeding, the Court issued a ruling in a separate case establishing that the first dismissal was predicated on an erroneous interpretation of the statute of limitations. Id. at 86. The Court reasoned that, because it is a "plea to the merits," a successful argument that a prosecution is time-barred results in a "judgment of acquittal," which should have no less protective effect against a second prosecution than a "judgment . . . of innocence." Id. The Court took care to acknowledge that it was giving preclusive effect to a prior determination made at a procedural stage where jeopardy had not attached; the Court stated,

---

[10] In addition, defendant discusses Searing, also cited above. But Searing is inapposite, as it applies collateral estoppel in a civil rights lawsuit. The Court, therefore, excludes Searing from its analysis of criminal collateral estoppel outside of the double jeopardy context.

> The safeguard provided by the Constitution against the gravest abuses has tended to give the impression that when it did not apply in terms, there was no other principle that could. But the 5th Amendment was not intended to do away with what in the civil law is a fundamental principle of justice in order, when a man once has been acquitted on the merits, to enable the government to prosecute him a second time.

Id. at 88 (citation omitted).

In considering Oppenheimer in light of Ashe, one might be tempted to conclude that the latter, in grounding criminal collateral estoppel in the Double Jeopardy Clause, overruled the former's holding that the doctrine applies outside of a double jeopardy context, "as a fundamental principle of justice in order." Id. But this is not so. Although the Ashe Court, unmistakably, constitutionalized criminal collateral estoppel as a component of the Double Jeopardy Clause, it did not prohibit—and indeed affirmed— the doctrine's parallel application as "an established rule of federal criminal law," in effect "at least since [Oppenheimer]." 397 U.S. at 443.

The Courts in DiGiangiemo and Evans recognized that Ashe left the door open for future courts to employ the due process-oriented, federal rule of criminal collateral estoppel first articulated in Oppenheimer. In DiGiangiemo, a state prisoner filed a petition for a writ of habeas corpus, arguing that his due process rights were violated when, at trial, the state introduced evidence against him obtained during a search that had been adjudicated illegal on a pretrial motion to suppress at a prior proceeding regarding a separate indictment. 528 F.2d at 1262. The Second Circuit observed (with Judge Friendly delivering the opinion), that although Oppenheimer did not constitutionalize criminal collateral estoppel, "overly sensitive ears are not needed to detect due process overtones" in the opinion. Id. at 1265-66. Accordingly, the DiGiangiemo court framed the question before it as "how far due process, unaided by the double jeopardy clause, requires a state to apply collateral estoppel in favor of a criminal defendant?" Id. at 1265. In dicta, the court opined that the due

10

process-oriented, federal rule of criminal collateral estoppel would, hypothetically, require a court to grant a defendant's motion to suppress where a prosecuting authority seeks to introduce evidence that the defendant had successfully suppressed pretrial at a prior proceeding regarding a separate indictment. Id. at 1266. Holding otherwise, the court explained, would lead to the "bizarre" outcome (under Ashe) that the "more orderly procedure of trying the suppression issue before [the defendant] was put in jeopardy should lead to a result less favorable to him." Id. Ultimately, however, the court denied defendant's habeas petition because he had not, in fact, moved at the second proceeding to collaterally estop plaintiff from introducing the previously suppressed evidence. Id. at 1267.

In Evans, defendant was indicted in the Eastern District of Lousiana (E.D. La.) and had previously been indicted on a related charge in the District of Connecticut (D. Conn.). 655 F. Supp. at 243. At a pretrial proceeding in the D. Conn., defendant successfully moved to suppress certain evidence against her, and plaintiff subsequently dismissed the indictment. Id. In Evans, defendant filed a pretrial motion to suppress the previously suppressed evidence, arguing that collateral estoppel barred plaintiff from relitigating the merits of the D. Conn. suppression motion. Id. at 244. Citing Ashe, plaintiff responded that collateral estoppel was inapplicable to the pretrial suppression motion because when it was decided defendant was not in jeopardy. Id. Relying on the DiGiangiemo dicta, the Evans court held that "due process" required the application of collateral estoppel to the D. Conn. suppression motion. Id. at 245 The Court reasoned that the prospect of relitigating the merits of that motion based "upon the same law and the same factual record . . . raises the spectre of forum shopping, and conflicts with notions of judicial economy . . . ." Id.

Under Oppenheimer, Ashe, DiGiangiemo, and Evans, it is thus clear that a federal court may apply criminal collateral estoppel—as a venerable, due process-oriented rule of federal law—to bar

a prosecuting authority from relitigating an issue against the same defendant that was already determined at a prior, separate proceeding, despite the fact that jeopardy had not attached at that proceeding. See also Loera v. United States, 714 F.3d 1025, 1029 (7th Cir. 2013) (". . . collateral estoppel is applicable in a criminal proceeding without reference to the double jeopardy clause.") (citations omitted).

Contrary to defendant's belief, however, neither Oppenheimer, DiGiangiemo, nor Evans address the precise issue before the Court, let alone compel the Court to bar plaintiff from prosecuting defendant on this charge. It is true that the facts of this case hew closely to those in Oppenheimer: there, the Supreme Court collaterally estopped plaintiff from seeking a new indictment, notwithstanding the facts that jeopardy had not attached when the first indictment was dismissed and, since that dismissal, the Court had issued a statement of controlling authority in a separate case overruling the dismissal's legal basis. But the Oppenheimer Court held only that collateral estoppel bars seeking grand jury reissuance of a previously dismissed indictment—irrespective of whether jeopardy had attached or there has been an intervening change in law—after a "judgment of acquittal," which the Court deemed a dismissal pursuant to the statute of limitations to be. 242 U.S. at 86-88. In Arterbury I, however, defendant did not win a judgment of acquittal. To the contrary, upon plaintiff's voluntary motion, the district court dismissed the case "without prejudice to refiling same." Arterbury I, 15-CR-182 at Dkt. # 47. As to DiGiangiemo and Evans, neither case addressed whether the due process-oriented, federal rule of criminal collateral estoppel bars a prosecuting authority from seeking reissuance of an indictment by a grand jury where, since the earlier proceeding, a higher court has issued a statement of controlling

12

authority—like Workman—overruling the legal basis upon which a suppression motion was granted in the earlier proceeding.

The Court is thus left to answer, as a question of first impression, whether the due process-oriented, federal rule of criminal collateral estoppel bars plaintiff from reprosecuting Arterbury in spite of Workman—i.e. a statement of controlling authority that overruled the legal basis upon which an earlier motion to suppress was granted.

Plaintiff contends that collateral estoppel is inapplicable here because Workman, which was issued after Arterbury I was dismissed, constitutes an intervening change in law. See Spradling, 198 F.3d at 1223 (" . . . collateral estoppel [is] inapplicable where, between the first and second suits, an intervening change in the law . . . create[s] new legal conditions.") (citation omitted). Defendant argues that it is the change-in-law exception to collateral estoppel itself that is inapplicable here because Workman did not change the law, but merely applied the good faith exception correctly. What neither party addresses, however, is whether the change-in-law exception to collateral estoppel, which is well-established in the civil context, applies to criminal collateral estoppel. The parties do not provide, and the Court has not found, any authority indicating that it does. And the Court will not simply assume that it does because, as the foregoing analysis illustrates, a set of concerns unique to the criminal context governs the doctrine of criminal collateral estoppel. For example, if an issue was determined in a defendant's favor at a proceeding where the defendant was in jeopardy, collateral estoppel as a component of the Double Jeopardy Clause bars a prosecuting authority from relitigating that issue as an ultimate issue in a successive proceeding, even where there has been an intervening change in law overruling the initial determination. The parties'

discussion of the change-in-law exception to civil collateral estoppel, therefore, misses the forest for the trees.

Having established that criminal collateral estoppel has application outside of a double jeopardy context, as a due process-oriented rule of federal law, and that no authority indicates whether there exists a change-in-law exception to this rule, the question before the Court boils down to this: is it fundamentally unfair to defendant, in light of Workman, for the Court to allow plaintiff to reprosecute Arterbury? To aid in this determination, the Court harkens back to the basic aims of the due-process oriented, federal rule of criminal collateral estoppel. These include: (1) reducing the chance that relitigation of an acquitted act could result in the conviction of an innocent defendant; (2) promoting finality; (3) promoting judicial economy; (4) denying the prosecution the opportunity to improve its case for a second trial; (5) preventing prosecutorial harassment; and (6) preventing prosecutorial forum shopping. See Evans, 655 F. Supp. at 245; The Due Process Roots of Criminal Collateral Estoppel, 109 Harv. L. Rev. at 1732-33 (collecting cases).

Considering these aims in light of the facts of this case, the Court finds that allowing plaintiff to reprosecute Arterbury is not fundamentally unfair to defendant. In Arterbury I, defendant was not acquitted of any acts. As to finality, the Arterbury I court's dismissal order specified that the case was dismissed without prejudice to refiling same; defendant, therefore, was on notice that plaintiff could refile its case against him. Regarding judicial economy, this principle cuts in defendant's favor, but its importance in the criminal context is lessened because of the "public interest in the accuracy and justice of criminal results." Standefer v. U.S., 447 U.S. 10, 25 (1980) (quotation omitted). Finally, nothing before the Court indicates that plaintiff sought to use Arterbury I as a rehearsal for the instant matter, is harassing defendant, or is simply forum shopping. Rather,

plaintiff, in what appears to be good faith, sought grand jury reissuance of the indictment against defendant because it believes, correctly, that Workman overrules the legal basis upon which the Arterbury I court granted defendant's motion to suppress. Under these circumstances, therefore, the due-process oriented, federal rule of criminal collateral estoppel does not require the Court to bar plaintiff from prosecuting Arterbury.

Accordingly, defendant's motion to enforce prior order suppressing evidence on grounds of collateral estoppel (Dkt. # 13) is **denied**.

### III. Defendant's Motion to Suppress and Request for an Evidentiary Hearing

Defendant argues that, even if the Arterbury I suppression order does not bind the parties in this case (which, as this opinion and order establishes, it does not), the Court must suppress the evidence that the FBI obtained in searching his residence and computer (including photos and videos of child pornography), as well as his statements to law enforcement officers. Dkt. # 14, at 1, 26. Defendant provides three reasons in support of this argument. First, he asserts that the E.D. Va. magistrate judge, under Fed. R. Crim. P. 41(b), lacked the authority to issue the PlayPen warrant. Id. at 5. Second, he contends that the affiant, in obtaining the PlayPen warrant, recklessly failed to disclose material information to the E.D. Va. magistrate judge, and defendant requests an evidentiary hearing on this issue. Id. at 14-15 (citing Franks v. Delaware, 438 U.S. 154, 155-56 (1978)). Third, defendant argues that the PlayPen warrant lacks probable cause because it is impermissibly overbroad. Id. at 21.

Plaintiff responds that Workman forecloses all of defendant's arguments. Dkt. # 18, at 4. Plaintiff is correct. As discussed, Workman held that the good faith exception applies to evidence

obtained pursuant to the PlayPen warrant. 868 F.3d at 1320-21.[11] In so holding, the court explained that the Supreme Court has identified five situations where the good faith exception is inapplicable, including where,

> 1. the affiant obtains the warrant by recklessly or intentionally supplying false information to the judge, [and] [. . .]
>
> 3. the executing officers cannot reasonably believe that probable cause existed [.]

Id at 1317-18 (citing Leon, 468 U.S. at 923). The court then stated that the PlayPen warrant "does not fit . . . these . . . situations." Under the doctrine of stare decisis, Workman's holding binds this Court. See Meredith v. Beech Aircraft Corp., 18 F.3d 890, 895 (10th Cir. 1994) ("Stare decisis is the policy of courts to adhere to precedent . . . ."). The Court, therefore, has no choice but to find that the evidence the FBI obtained in searching defendant's residence and computer (including photos and videos of child pornography), as well as defendant's statements to law enforcement officers, are admissible under the good faith exception to the Fourth Amendment's exclusionary rule. Workman, 868 F.3d at 1319.

Accordingly, defendant's motion, in the alternative, to suppress and request for an evidentiary hearing (Dkt. # 14) are **denied**.

**IT IS THEREFORE ORDERED** that defendant's motion to enforce prior order suppressing evidence on the ground of collateral estoppel (Dkt. # 13) is **denied**.

**IT IS FURTHER ORDERED** that defendant's motion, in the alternative, to suppress evidence and request for an evidentiary hearing (Dkt. # 14) are **denied**.

**DATED** this 1st day of May, 2018.

*[signature]*
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

---

[11] See supra pages 3-4.